1    WO

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                         **FOR THE DISTRICT OF ARIZONA**

8

9    Shizue S. White,                          No. CV-14-01021-PHX-JAT

10                 Plaintiff,                   **ORDER**

11   v.

12   Aurora Loan Services LLC, et al.,

13                 Defendants.

14

15          Pending before the Court is Defendants' Motion for Summary Judgment,

16   (Doc. 78), and Plaintiff's Response/Cross Motion for Summary Judgment to Defendant's

17   [sic] Motion for Summary Judgment, (Doc. 81). The Court now rules on the motions.

18   **I.      Factual Background[1]**

19          In 1998, Plaintiff and her husband (the "Whites") obtained a loan from Old Kent

20

21          [1] The Local Rules of Civil Procedure for the District of Arizona ("Local Rules")
22   require a party opposing a summary judgment motion to file a controverting statement of
     facts either agreeing with or disputing each of the moving party's statements of fact.
23   LRCiv 56.1(b). If a non-movant disputes a statement of fact, she must point to admissible
     evidence showing that a genuine dispute exists. *Id.* If a non-movant does not properly
24   address a statement of fact, the Court may consider that fact undisputed for purposes of
     the motion. Fed. R. Civ. P. 56(e)(2). Here, Plaintiff did not file a controverting statement
25   of facts, nor did she otherwise respond to Defendants' factual assertions. Although she
     objected to some of the evidence used to support Defendants' statement of facts, Plaintiff
26   did not address the facts themselves. *See* (Doc. 80 at 12). The Court will therefore deem
     Defendants' statement of facts undisputed unless the record proves otherwise and will
27   grant summary judgment "if the motion and supporting materials—including the facts
     considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).
28

Mortgage Company to purchase real property located in Sun City, Arizona. (Doc. 79 at 1). In 2003, Plaintiff refinanced the 1998 loan with First Magnus Financial Corporation. (*Id.* at 2). In 2006, Plaintiff refinanced again, this time with Credit Union West. (*Id.*) Finally, in March 2007, Plaintiff initiated and completed a third refinance with American Brokers Conduit ("ABC"), which is evidenced by a Promissory Note and Deed of Trust. (*Id.*) Plaintiff's third refinance is the subject of this lawsuit.

At the time of the March 2007 refinance, Plaintiff was an elderly widow who had lived in the United States for over fifty years after emigrating from Japan. (*Id.* at 3). Before moving to Arizona, Plaintiff owned and operated a successful daycare business in California for twenty years. (*Id.* at 1). Plaintiff's husband spoke no Japanese, and English was the "near-exclusive" language spoken in the Whites' household. (*Id.*)

Sometime in early 2007, Plaintiff called a lender seeking a lower monthly payment on her mortgage. (*Id.* at 2). The lender stated that "we can do something with interest only." (*Id.*) In March 2007, a lender representative went to Plaintiff's house to conduct the closing. (Doc. 79-1 at 114). The representative was "professional," spoke exclusively English during the closing, and did not rush Plaintiff into signing the documents or discourage her from taking the documents to someone else for review. (Doc. 79 at 2–3).

Included in the closing documents was the Promissory Note describing Plaintiff's obligation to repay the loan. At the heart of this dispute are the Note's payment options and negative amortization features. These terms were disclosed to Plaintiff at closing, including the following statement on the first page of the Note, in bold, capital type:

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. DURING THE FIRST 5 YEARS OF THIS NOTE, MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I REPAY MAY BE LARGER THAN THE AMOUNT ORIGINALLY BORROWED.**

(*Id.* at 3). The closing documents also included a four-page "Variable Rate Mortgage

Program Disclosure," which outlined the general aspects of variable rate mortgages. (*Id.*) During her deposition, Plaintiff testified that she understood the concept of an interest-only loan and could comprehend the interest-only disclosures and variable rate mortgage documents that she signed at closing. (*Id.*) However, despite understanding that a promissory note creates a binding legal obligation to repay the underlying loan, Plaintiff did not read any of the documents before she signed them at closing. (*Id.* at 3–4).

After the March 2007 closing, Plaintiff received monthly statements expressly detailing her payment options and their impact on the loan's principal. (*Id.* at 4). Specifically, the monthly statements explained the differences between an accelerated payment, a full monthly payment, an interest-only payment, and a minimum payment that did not fully cover the accrued monthly interest. (*Id.*) For example, the statements described "minimum amount due" as "[t]his amount will not be sufficient to pay all the accrued interest for the month or to pay the loan in full over the remaining term in equal monthly installments. Therefore negative amortization may result and any deferred interest will be added to the balance of your loan." (Doc. 79-2 at 4). Despite the four payment options available to her, Plaintiff chose to make minimum payments which, in turn, increased the loan's principal. (Doc. 79 at 4). Plaintiff testified that she first noticed the increased principal balance in 2008, but did not take any action until the minimum payment period expired in 2011. (*Id.*) At that point, Plaintiff spoke with her son about the principal increase. (*Id.*) This lawsuit was filed in May 2014. (Doc. 1).

Regarding the ownership and property interests in the Note and Deed of Trust, the original lender on the Note was ABC. (Doc. 79 at 1). At that time, the Note was secured by a Deed of Trust under which the Trustee was Chicago Title Insurance Company and the beneficiary was Mortgage Electronic Registrations Systems, Inc. ("MERS"). (*Id.*; Doc. 79-1 at 230–45). In September 2007, ABC hired Aurora Loan Services, L.L.C. ("Aurora") to service the Note. (Doc. 79 at 6). In July 2012, Nationstar Mortgage, L.L.C. ("Nationstar") became the servicer of the Note after it acquired Aurora. (*Id.*) On November 7, 2013, MERS, "as nominee for [ABC], its successors and/or assigns,"

assigned the Note and its proceeds to U.S. Bank as Trustee for the Certificate Holders of the LXS 2007 7N Trust Fund ("U.S. Bank"). (Doc. 79-2 at 51–52).[2] Currently, U.S. Bank is the sole beneficiary of the Deed of Trust and possesses the original Note, endorsed in blank, through its agent Nationstar. (*Id.*)[3] On February 26, 2014, Nationstar, "as Attorney in Fact for U.S. Bank," appointed Clear Recon Corporation as Trustee of the Deed of Trust. (Doc. 13-1 at 48). Subsequently, Clear Recon Corporation noticed a Trustee's Sale, which this Court enjoined. (Doc. 29).

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by "citing to particular parts of materials in the record," including depositions, affidavits, interrogatory answers or other

---

[2] To the extent Plaintiff objects to this document on hearsay, authentication, or foundational grounds, the Court overrules the objection. *See* (Doc. 80 at 12) (objecting to Nationstar's Declaration and "any document premised upon it"). Plaintiff's objection to the Declaration appears to be that the declarant did not personally review the information attested to in the Declaration. (*Id.*) However, the Declaration states that (1) the declarant "has access to" and "knowledge of" Nationstar's computer database containing its business records, (2) "[t]he information described herein and referenced below is found in Nationstar's computer database," and (3) "[b]ased upon the records contained in the computer database, I have gained knowledge of the facts set forth herein." (Doc. 79-2 at 20–22). It is clear from the Declaration that the declarant has personal knowledge of the records to which he refers and is authorized to make the Declaration. In any event, Plaintiff makes no objection to this particular document, which is a notarized "Corporate Assignment of Deed of Trust" from MERS to U.S. Bank. (*Id.* at 51–52). Thus, Plaintiff's objection is overruled.

[3] On August 31, 2012, MERS, as nominee for ABC, assigned the beneficial interest in the Deed of Trust to Nationstar. (Doc. 79-1 at 51–52). Then, on November 7, 2013, MERS, again as nominee for ABC, assigned the Deed of Trust, including MERS' "beneficial interest under the Deed of Trust" to U.S. Bank. (Doc. 38-1 at 21). Based on Defendants' filings, the Court has found that MERS' August 31, 2012 assignment to Nationstar is no longer operative and Nationstar relinquished any property or beneficial interest it may have had in the Deed of Trust. (Doc. 66 at 4).

materials, or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. Further, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury." (citations omitted)).

At the summary judgment stage, the trial judge's function is to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Liberty Lobby*, 477 U.S. at 249–50. If the evidence is merely colorable or is not

1  significantly probative, the judge may grant summary judgment. *Id.* Notably, "[i]t is well

2  settled that only admissible evidence may be considered by the trial court in ruling on a

3  motion for summary judgment." *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179,

4  1181 (9th Cir. 1988).

5  **III.    Defendants' Motion for Summary Judgment**

6          Plaintiff asserts five tort claims against Defendants, namely, negligence, common

7  law fraud, violations of the Arizona Consumer Fraud Act ("CFA") and Fair Debt

8  Collections Practices Act ("FDCPA"), and misrepresentation. (Doc. 1 at 7–16).[4] Plaintiff

9  also seeks injunctive and equitable relief. (*Id.*) Defendants move for complete summary

10 judgment. (Doc. 78). The Court will analyze each of Plaintiff's claims in turn.

11         **A.    Statutes of Limitation**

12         To begin, Defendants argue that Plaintiff's five tort claims are barred by their

13 respective statutes of limitation. (Doc. 78 at 5–6). In response, Plaintiff contends that

14 "equitable tolling" applies because she has alleged "extraordinary circumstances" that

15 warrant tolling of the limitation periods. (Doc. 80 at 13).[5] Specifically, Plaintiff argues

16 that "[t]he determination of the genuine issue as to the purchase of America [sic] Brokers

17 Conduits [sic] assets while in an active bankruptcy and the further factual determination

18 if such transfer was with or without [the Bankruptcy] Court's consent as well and the

19 precipitous ramifications thereof may meet and exceed the standard required to apply

20 equitable suspension or tolling." (*Id.* at 14). Plaintiff also cites two Arizona statutes that

21 allegedly designate a "[s]tatutory exception that may apply to suspend or legally toll the

22 limitations period in this matter." (*Id.* at 13) (citing Ariz. Rev. Stat. §§ 12-501, 43-722).

23 Plaintiff, however, does not explain how statutes involving a person's absence from a

24 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25         [4] The operative complaint is Plaintiff's original Complaint filed at Docket No. 1.

26 *See* (Doc. 68). Despite being granted leave to file an amended complaint, *see* (Doc. 67),
   Plaintiff did not do so, *see* (Doc. 68).

27         [5] The Court assumes this is Plaintiff's argument despite Plaintiff stating that "the

28 doctrine of equitable tolling, a concept rooted in common law, is not applicable here."
   (*Id.*) (citation omitted).

state, *see* Ariz. Rev. Stat. § 12-501, or the assessment of properties in bankruptcy or receivership proceedings, *see id.* § 43-722, apply to this case. Because both statutes are inapplicable, the Court will focus its analysis on the doctrine of equitable tolling.

### 1.    **Legal Standard for Equitable Tolling**[6]

In Arizona, "whether to apply equitable tolling is a question the trial court, not the jury, should determine." *McCloud v. State*, 170 P.3d 691, 695 (Ariz. Ct. App. 2007). Under this doctrine, Plaintiff "may sue after the statutory time period for filing a complaint has expired if [she] ha[s] been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Id.* (citation omitted). While courts have applied equitable tolling in a variety of circumstances, such requests should be granted "sparingly." *See id.* (collecting cases). Ultimately, to obtain relief via equitable tolling, Plaintiff must "establish extraordinary circumstances" that were "beyond [her] control[, making] it impossible to file the claims on time." *Id.* at 696 (citations omitted); *see Porter v. Spader*, 239 P.3d 743, 747 (Ariz. Ct. App. 2010) ("[A] defendant whose affirmative acts of fraud or concealment have misled a person from either recognizing a legal wrong or seeking timely legal redress may not be entitled to assert the protection of a statute of limitations."). Plaintiff bears the burden of establishing such extraordinary circumstances "with evidence; [s]he cannot rely solely on personal conclusions or assessments." *McCloud*, 170 P.3d at 695.

### 2.    **Negligence**

Plaintiff's first cause of action, negligence, is premised on her argument that Defendants breached a duty to her by "creating and enforcing" the March 2007 Note which allegedly included "unconscionable" terms. (Doc. 1 at 7). According to Plaintiff, Defendants "deceiv[ed]" her into believing that she could afford the repayment terms by "never expressly indicat[ing] that the terms of the NOTE contained negative amortization

---

[6] Once again, Defendants did not cite Arizona law in their discussion regarding equitable tolling, choosing instead to cite a Ninth Circuit case interpreting California law. (Doc. 82 at 3–4). This is not the first time Defendants forewent applying binding Arizona precedent, despite a Court Order requiring them to do so. *See* (Doc. 39 at 10–11).

1   features." (*Id.* at 5). In other words, Plaintiff claims that Defendants negligently harmed

2   her during the loan's origination in 2007.

3          The statute of limitations for a negligence claim in Arizona is two years. *See* Ariz.

4   Rev. Stat. § 12-542(1); *Bridges v. Safeway, Inc.*, 2012 WL 3193530, at *3 (Ariz. Ct. App.

5   Aug. 7, 2012) ("When an action 'sounds in negligence or tort,' the applicable statute of

6   limitations is A.R.S. § 12-542."). Because Defendants' alleged misconduct occurred

7   during the loan's origination in 2007 and this lawsuit was not filed until May 2014,

8   Plaintiff's negligence claim is time-barred unless "extraordinary circumstances" made it

9   "impossible" for Plaintiff to file her claim on time. *McCloud*, 170 P.3d at 695.[7]

10         In this regard, Plaintiff failed to support her argument that equitable tolling

11  applies. Plaintiff avers "there is a contention that the actions of Defendant [sic], or agents

12  or representatives, served to conceal the cause of action, misled Plaintiff in any fashion

13  [sic], or caused Plaintiff to delay filing her complaint in a timely manner." (Doc. 80 at

14  13–14). The Court has reviewed the record in its entirety and finds that no such

15  contentions have ever been alleged. Rather, the Complaint simply claims that Defendants

16  "deceiv[ed]" Plaintiff into signing a note containing unconscionable terms, not that

17  Defendants concealed the underlying cause of action. There is nothing in the record to

18  suggest that this is a case where Defendants "induced" Plaintiff to forego litigation. *See*

19  *Certainteed Corp. v. United Pac. Ins. Co.*, 762 P.2d 560, 564 (Ariz. Ct. App. 1988). In

20  fact, Plaintiff admitted that Defendants did not tell her anything untrue about the March

21  2007 loan before she signed the closing documents, (Doc. 79-1 at 113), and has failed to

22  point to any misleading statements made by Defendants thereafter.

23         Furthermore, Plaintiff did not present any evidence to support her concealment

24  argument, and the record evidence proves to the contrary. Particularly, the allegedly

25  unconscionable terms were disclosed in bold, all capital letters to Plaintiff at the March

26  ―――――――――――――――

27  [7] Even if the Court were to find that Plaintiff's negligence claim accrued when
    Defendants attempted to "enforce" the Note when the minimum payment period expired
28  in 2011, the claim would still be time-barred by the two-year statute of limitations absent
    extraordinary circumstances.

2007 closing. (Doc. 79 at 3).[8] The terms were also provided to Plaintiff every month thereafter via monthly statements that explained the four payment options and their impact on the loan's principal. (*Id.* at 4). To be sure, the monthly statements expressly alerted Plaintiff that the minimum payment option "will not be sufficient to pay all of the accrued interest for the month or to pay the loan in full over the remaining term in equal monthly installments. Therefore, negative amortization may result and any deferred interest will be added to the balance of your loan." (Doc. 79-2 at 4). Such intelligible[9] and perpetual disclosure critically belies Plaintiff's argument that Defendants "concealed" their wrongdoings. Indeed, a cursory review of these documents would have informed Plaintiff all she needed to know about the effects of paying the minimum amount.

Finally, Plaintiff was certainly aware of the consequences of paying the minimum amount in 2008 when she claims to have first noticed the increased loan balance. (Doc. 79 at 4). Similarly, Plaintiff understood the impact of paying the minimum amount when she discussed the principal increase with her son in 2011 after the minimum payment period expired. (*Id.*) Accordingly, Plaintiff's argument that Defendants concealed their purported misconduct is unpersuasive.

For these reasons, the two-year statute of limitations for Plaintiff's negligence claim expired well before she filed this lawsuit in May 2014. The Court will therefore grant Defendants' motion for summary judgment on Plaintiff's negligence claim.

### 3.      Common Law Fraud

As her second cause of action, Plaintiff asserts a claim for common law fraud. (Doc. 1 at 7–9). In her Complaint, Plaintiff contends that Defendants "[d]eceptively [led] Plaintiff to believe she could afford the terms of the NOTE," "to believe her payments

---

[8] The Court notes that this is not a case where the purportedly unconscionable terms were buried in a small-print, boilerplate sentence at the end of an eye-glazing contract. The Note itself is less than four full pages, and the disputed terms are disclosed in bold, all capital font on the top of the first page. *See* (Doc. 79-1 at 225–28).

[9] Plaintiff's son testified that the monthly statements "gave [Plaintiff] a menu of options that she could pay if that is what she wanted to do." (Doc. 79-1 at 34).

would remain affordable throughout the duration of the loan," and "to be unaware of the negative amortization features of the NOTE[.]" (*Id.* at 8–9).

In Arizona, common law fraud claims are subject to a three-year statute of limitations. Ariz. Rev. Stat. § 12-543(3). This period "begins to run when the plaintiff by reasonable diligence could have learned of the fraud, whether or not he actually learned of it." *Coronado Dev. Corp. v. Super. Ct. of Ariz.*, 678 P.2d 535, 537 (Ariz. Ct. App. 1984) (citing *Guerin v. Am. Smelting & Refining Co.*, 236 P. 684 (Ariz. 1925)).

For the reasons detailed in the preceding section, Plaintiff "by reasonable diligence could have learned" of the purported fraud either (1) by actually reading the loan documents in 2007, (2) after realizing the principal's balance had increased in 2008, or (3) by simply reviewing the monthly statements. The fact that Plaintiff did not actually know of the alleged fraud at these times is irrelevant—Plaintiff, "by reasonable diligence," could easily have done so. *See Anderson v. City Van & Storage Co.*, 340 P.2d 566, 568 (Ariz. 1959) ("Plaintiff claims she did not read the contract which, of course, is no defense to an action on contract."). The Court will therefore grant Defendants' motion for summary judgment on Plaintiff's common law fraud claim.

### 4.    Arizona CFA

To the extent Plaintiff's Complaint alleges that Defendants committed consumer fraud during the origination of the loan in March 2007, (Doc. 1 at 11–12), any such claim is once again barred by the statute of limitations. "A consumer fraud claim must be filed within one year after the cause of action accrues." *Steinberger v. McVey*, 318 P.3d 419, 436 (Ariz. Ct. App. 2014); *see Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1380 (Ariz. Ct. App. 1994) ("[A] consumer fraud action must be initiated within one year after the cause of action accrues."); *Murry v. W. Am. Mortg. Co.*, 604 P.2d 651, 654 (Ariz. Ct. App. 1979) ("Since the Consumer Fraud Act creates a cause of action separate from common law fraud, an action commenced thereunder must be brought within one year as [it] requires."); *see also* Ariz. Rev. Stat. § 12-541(5). Plaintiff did not file her consumer fraud claim—which is grounded in the same alleged misconduct as her common law fraud

claim—until May 2014. As a result, her consumer fraud claim is time-barred.

### 5.    FDCPA

Plaintiff also asserts that Defendants violated the FDCPA due to the same allegedly misleading statements as her common law fraud and Arizona CFA claims. (Doc. 1 at 10–11). For the reasons set forth above, an FDCPA claim based on those statements is barred by the one-year statute of limitations, *see* 15 U.S.C. § 1692k(d), and the Court will grant Defendants' motion for summary judgment on this count.[10]

### 6.    Misrepresentation

Plaintiff's seventh count, titled simply "misrepresentation," alleges that Defendants "falsely assert[ed]" that Plaintiff could afford the terms of the loan and made "implied misrepresentations by approving" her for the loan. (Doc. 1 at 13). Again, this allegedly unlawful conduct occurred during loan origination in 2007. Thus, for the reasons outlined above, Plaintiff's attempt to avail herself of equitable tolling fails, and her "misrepresentation" claim is time-barred by the statute of limitations. *See* Ariz. Rev. Stat. § 12-543(3) (three-year statute of limitations for fraudulent misrepresentation claims); *Hullett v. Cousin*, 63 P.3d 1029, 1034 (Ariz. 2003) ("The statute of limitations for a negligent misrepresentation claim is two years." (citing Ariz. Rev. Stat. § 12-542)).

---

[10] While immaterial to the Court's holding, the Court notes that Plaintiff does not dispute Defendants' contention that they are "loan servicers" and "not 'debt collectors' under the FDCPA." *See* (Docs. 78 at 9–10; 79 at 5). Typically, the Court would consider the fact undisputed; yet, it would be asinine for the Court to stick its head in the sand when presented with a falsehood. The monthly statements that outlined Plaintiff's payment options also disclosed:

> **Important information regarding the Fair Debt Collection Practices Act and Bankruptcy Law**
> Aurora Loan Services is a debt collector. Aurora Loan Services is attempting to collect a debt and any information obtained will be used for that purpose.

(Doc. 79-2 at 4). Comparing Defendants' statements that "Defendants are not 'debt collectors' under the FDCPA" and "Aurora is not a 'debt collector,'" (Doc. 78 at 10), with the disclosure in the monthly statements that "Aurora Loan Services is a debt collector," (Doc. 79-2 at 4), is troubling. In the future, it would behoove Defendants to double—if not triple—check the integrity of their arguments.

1    The Court will therefore grant Defendants' motion for summary judgment on this claim.

2    **7.    Conclusion for Statutes of Limitation**

3    For the foregoing reasons, the Court concludes that Plaintiff's claims for

4    negligence, common law fraud, violations of the Arizona CFA and FDCPA, and

5    misrepresentation are barred by their respective statutes of limitation. Thus, summary

6    judgment in favor of Defendants on these counts is appropriate.

7    **B.    Remaining Claims[11]**

8    Plaintiff's Complaint also seeks injunctive and equitable relief. Particularly,

9    Plaintiff's sixth count is titled "Unlawful and Attempted Foreclosure," while her eighth

10   claim is termed "Equitable Estoppel." (Doc. 1 at 12–13). Defendants move for summary

11   judgment on both counts. (Doc. 78 at 10–13). The Court will address each in turn.

12   **1.    "Unlawful and Attempted Foreclosure"[12]**

13   As her sixth cause of action, Plaintiff asserts a claim for "unlawful and attempted

14   foreclosure." (Doc. 1 at 12). To support this count, Plaintiff complains that Defendants

15   engaged in "predatory lending" and committed several violations of the FDCPA. (*Id.*)

16   Plaintiff also contends that "Defendants do not have any legal right to foreclose on

17   Plaintiff' [sic] property." (*Id.*) In her summary judgment brief, Plaintiff attempted to

18   clarify this claim by arguing that Defendants lack "standing" to foreclose on the property.

19   (Doc. 80 at 8–11, 16). Specifically, Plaintiff—after "numerous hours of research"—

20   believes that the original lender, ABC, improperly assigned the Deed of Trust to

21   Defendants' principal, U.S. Bank, because ABC did not have any interest to assign after

23   [11] Plaintiff makes several discovery-related arguments in her summary judgment
24   briefing. *See* (Doc. 80 at 8–12). The time for discovery disputes has long since passed
     and asserting same at summary judgment directly violates the Court's Rule 16
25   Scheduling Order. *See* (Doc. 56 at 2) ("[T]he Court will **not** entertain discovery disputes
     after the close of discovery barring extraordinary circumstances."). Plaintiff makes no
26   attempt to explain what "extraordinary circumstances" apply here, and the Court finds
27   that none exist.

28   [12] In a prior Order, the Court interpreted this count as "a claim for the cause of
     action to avoid a Trustee sale recognized in *Steinberger*." (Doc. 39 at 9).

bankruptcy proceedings eliminated its interest in the Deed of Trust. (*Id.* at 9). In Plaintiff's view, a disputed issue of material fact exists as to the validity of the assignment. (*Id.*)

In response, Defendants contend that the Court should disregard Plaintiff's standing argument because it was not disclosed in the Complaint or at any point thereafter. (Doc. 82 at 7). In any event, Defendants explain that the assignment in question was not an assignment of any interest of ABC, but of the original Deed of Trust beneficiary, MERS, "as nominee for [ABC], its successors and/or assigns." (*Id.*) Thus, according to Defendants, whether ABC had any interest to assign is irrelevant because the MERS' assignment effectuated the transfer for ABC and its "successors and assigns." (*Id.*) Defendants state that "regardless of who (if anyone) may have acquired [ABC]'s interest in the Deed of Trust (if any) through the bankruptcy proceeding, MERS was acting *for that person* as a matter of law." (*Id.*) (citation omitted). Finally, Defendants insist that regardless of the assignment's validity, "it is black-letter law in Arizona that an assignment of a deed of trust is not necessary to transfer an interest in the deed of trust." (*Id.* at 8) (citing Ariz. Rev. Stat. § 33-817). Thus, because Defendants have shown that U.S. Bank is the holder of the Note, U.S. Bank "by definition" is the beneficiary of the Deed of Trust. (*Id.*)

To begin, Plaintiff provides no evidentiary support to buttress her argument that an alleged bankruptcy proceeding generates a disputed issue of material fact as to the assignment of the Deed of Trust. There is nothing in the record evidencing the alleged bankruptcy and mere attorney argument is not enough to create a disputed issue of material fact. *See Liberty Lobby*, 477 U.S. at 248. As the non-movant, Plaintiff bears the burden of showing that a disputed issue of material fact exists by pointing to actual evidence for the factfinder to consider. *See Matsushita Elec. Indus.*, 475 U.S. at 586–87; *Steinberger*, 318 P.3d at 430 (stating that a mortgagor "bears the burden of proving her

claim that [the mortgagee] lack[s] the authority to conduct a trustee's sale").[13] Here, the only evidence in the record shows that U.S. Bank is the holder of the Note and beneficiary to the Deed of Trust, and that Nationstar, as "Attorney in Fact" for U.S. Bank, is the servicer of the Note. *See* (Docs. 79 at 6; 79-2 at 22–24, 34–37). As Attorney in Fact, Nationstar substituted the Trustee under the Deed of Trust, who subsequently noticed the Trustee's Sale. (Docs. 79 at 6; 79-2 at 54–55, 57–58). Both actions are permitted under Arizona law. *See* Ariz. Rev. Stat. §§ 33-804, 33-807. Consequently, because it is undisputed that Plaintiff defaulted on her loan, Nationstar acted pursuant to its legal and statutory authority when it attempted to foreclose on the property. *See Steinberger*, 318 P.3d at 430 (explaining that a mortgagee can prove it is the "true" beneficiary or trustee of a deed of trust by providing "documents in the chain of title tracing [the mortgagee's] beneficial interest from the original beneficiary, such as assignments, substitutions or a power of attorney").

Plaintiff also appears to contend that unconscionability plays a role in this case beyond her negligence claim—though she does not explain in what context. *See* (Doc. 80

---

[13] Plaintiff objects to several sections in Defendants' motion for summary judgment because she believes the sections are "conclusory in natural [sic]. Defendant [sic] simply states that no evidence exists rather than demonstrate to the [sic] how the facts of the [sic] leave no genuine issue of material fact." (Doc. 80 at 12). Plaintiff fails to grasp rudimentary summary judgment procedure. As the movant, Defendants bore the burden of either pointing to evidence in the record showing that they are entitled to judgment as a matter of law or showing "that an adverse party cannot produce admissible evidence" sufficient to create a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 323 (explaining that summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). The burden then *shifted* to Plaintiff as the non-movant to establish the existence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 323. Thus, it was Plaintiff's responsibility as the non-movant to point to a genuine dispute of material fact after Defendants established that no evidence supporting Plaintiff's claims existed. In this regard, Plaintiff cited numerous exhibits that are not in the record and did not even file a separate controverting statement of facts or otherwise respond to each of Defendants' factual assertions.

at 19–20). To the extent Plaintiff believes that the Note contained unconscionable terms thereby making foreclosure of the property unlawful, Plaintiff does not explain which terms are unconscionable, *see* (*id.*),[14] nor did she respond to Defendants' interrogatory asking her to "Identify all terms of the Note that You allege to be unconscionable, and describe in detail why each term is unconscionable," (Doc. 79 at 5). In fact, Defendants even asked Plaintiff to admit "that an interest-only payment term is not unconscionable . . . [and] that a negative amortization term is not unconscionable" via Federal Rule of Civil Procedure ("Rule") 36 requests for admissions. (*Id.*) Plaintiff did not respond, *see* (*id.*), and thus, the Court deems the requests admitted, *see* Fed. R. Civ. P. 36(a)(3).[15] Accordingly, nothing in the record creates a disputed issue of material fact as to unconscionability of the Note.[16]

_____

[14] Insofar as Plaintiff believes that there was a "100% applicability of negative amortization to the balance" of the loan's principal, (*id.*), her belief is misguided. As expressed above, it is undisputed that four payment options—including three that did not incorporate negative amortization—were regularly given to Plaintiff during the relevant time period. (Doc. 79 at 4). Plaintiff, in her discretion, chose to pay the minimum amount, which was clearly described as "not . . . sufficient to pay all the accrued interest for the month or to pay the loan in full over the remaining term in equal monthly installments. Therefore negative amortization may result and any deferred interest will be added to the balance of your loan." (Doc. 79-2 at 4). In short, there was not a "100% applicability of negative amortization to the balance" of the loan's principal.

[15] The Court notes that at the time Defendants served Plaintiff with these Rule 36 requests for admission, Plaintiff was represented by counsel. *See* (Doc. 79-2 at 9–15).

[16] In any event, there is no evidence in the record that Defendants own a beneficial or property interest in the Deed of Trust or hold the Note in their individual capacity. *See* (Doc. 66 at 4). Consequently, challenging the consciability of the Note's terms as a basis for preventing Defendants from foreclosing on the property is improper as such a claim should have been brought against the holder of the Note, U.S. Bank, or Nationstar as Attorney in Fact for U.S. Bank. The Court explained this concept multiple times during this litigation and even suggested that Plaintiff could move to amend her complaint to add these parties. *See* (*id.* at 3–7; Doc. 39 at 3–6). As it stands, however, to the extent Plaintiff predicates her "unlawful and attempted foreclosure" count on the unconscionability of the Note, such a claim is improper against a party other than the holder of the Note.

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment on Plaintiff's "unlawful and attempted foreclosure" claim.

### 2.   Equitable Estoppel

As her eighth cause of action, Plaintiff asserts a claim for equitable estoppel. (Doc. 1 at 13). Equitable estoppel, however, is not a valid cause of action under Arizona law. *See Sch. Dist. No. 69 v. Altherr*, 458 P.2d 537, 544 (Ariz. Ct. App. 1969) ("[E]quitable estoppel is a shield, not a sword, hence it forms no basis for a cause of action for damages[.]"). To the extent Plaintiff contends that equitable estoppel should prevent Defendants from raising statutes of limitation defenses, *see* (Doc. 80 at 16–17), her argument fails. To establish equitable estoppel, Plaintiff must show: "(1) affirmative acts inconsistent with a claim afterwards relied upon; (2) action by a party relying on such conduct; and (3) injury to the party resulting from a repudiation of such conduct." *McBride v. Kieckhefer Assocs., Inc.*, 265 P.3d 1061, 1066 (Ariz. Ct. App. 2011) (citation omitted). Here, Plaintiff did not establish any of these elements, nor does she even argue that the elements are met. The Court will therefore grant Defendants' motion for summary judgment on this issue.

## IV.   Plaintiff's Cross-Motion for Summary Judgment

Plaintiff's cross-motion for summary judgment is not actually a motion. *See* (Doc. 81). Beyond requesting that Defendants' motion for summary judgment be denied, the motion does not seek further relief and appears to have been inadvertently filed as a cross-motion for summary judgment as it is identical to Plaintiff's response to Defendants' motion for summary judgment. *Compare* (Doc. 80) *with* (Doc. 81). In any event, because the Court has granted Defendants' motion for summary judgment in its entirety,[17] Plaintiff's cross-motion for summary judgment will be denied.

## V.   Conclusion

For the foregoing reasons,

---

[17] Count 3 of Plaintiff's Complaint was dismissed by a prior Order, *see* (Doc. 39 at 11), and thus, all claims asserted in the Complaint have been adjudicated.

1    **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 78) is

2    **GRANTED**.

3    **IT IS FURTHER ORDERED** that Plaintiff's Response/Cross Motion for

4    Summary Judgment to Defendant's [sic] Motion for Summary Judgment (Doc. 81) is

5    **DENIED**.

6    **IT IS FURTHER ORDERED** that the June 12, 2014 Preliminary Injunction

7    (Doc. 29) is hereby **DISSOLVED**. Defendants are no longer enjoined from conducting a

8    Trustee's Sale of the residence at 11126 Nocturne Court, Sun City, Arizona 85351. The

9    bond is exonerated.

10    **IT IS FINALLY ORDERED** that the Clerk of Court shall terminate this case and

11    enter judgment in favor of Defendants and against Plaintiff accordingly.

12    Dated this 5th day of July, 2016.

James A. Teilborg
Senior United States District Judge